## The People v. James Higgins.

*Keeping saloon closed on Sunday.*

A saloon-keeper occupied three rooms for that business, and lived over them. The rooms opened into one another from front to rear, and the rear room had an outer door. The bar was in the front room; the other two were used for card-playing and drinking. Between the front and back rooms there was a hole in the wall. *Held*, that the saloon included the three rooms; and if any outsider had access to the rear rooms on Sunday, no matter for what purpose, the statute requiring the saloon to be kept closed on that day was violated.

Exceptions from Ottawa. (Arnold, J.) Jan. 20.—Jan. 28.

Complaint for not keeping saloon closed on Sunday. Conviction affirmed.

Attorney General *Moses Taggart* for the People.

*Samuel D. Clay* and *E. S. Eggleston* for respondent.

CHAMPLIN, J. Defendant was convicted of the offense of keeping his saloon open on the 14th day of October, A. D. 1883, being the first day of the week, commonly called Sunday. The case is brought here upon exceptions to the charge of the court, and upon his refusal to charge as requested by respondent's counsel. Respondent's business is carried on upon the ground floor of his building, and he resides with his family over his saloon. The ground floor or first story is divided into three rooms, the main room fronting the street in which was a bar where he kept and sold spirituous liquors. In the rear of this were two rooms habitually used for playing at cards by the customers of respondent, where drinks were frequently served to such customers while playing at cards, and such back rooms were used in connection with the front room for the accommodation of his customers who visited his saloon. The rear rooms were connected with the front room by a door, and there was also a rear door opening

from one of the rear rooms to respondent's premises.    There was also an aperture in the wall between the front and rear rooms near the bar, called by a witness a "pigeon-hole."    The door connecting the front with the back rooms can be locked so as to cut off all access of persons from the card-rooms to the bar-room.    It was testified to by a witness on behalf of the people that on Sunday, October 14, 1883, he went through the back room into the bar-room and obtained a glass of gin from respondent, whom he found behind the bar.    This testimony was denied by respondent, who testified that the door between the bar-room and the card-rooms was locked all day of the 14th of October, 1883, and that he neither sold nor did any one drink any liquor in his saloon that day.    He admitted that the rear door was unlocked, and that he himself and Mr. Jones were in there, but that Jones merely called to ask him if he wanted his horse that day.    There was other evidence showing that several persons were seen going in and coming out of the rear door on the Sunday named.

The court instructed the jury that it is not necessary that the respondent should have kept his saloon open during the whole of the day ; that it was a violation of the statute to keep it open for any portion of the day ; that if respondent kept his saloon open ten minutes, or even five minutes, it is a violation of the statute ; that if the saloon was kept open by respondent so that the public could enter if they chose, it was kept open within the meaning of the statute; that to keep the saloon closed, within the meaning of the statute, the sale of the liquors mentioned in the statute must be entirely stopped, and the traffic effectually shut off, so that drinking and the conveniences for drinking shall no longer be accessible ; that the saloon must be kept closed, and cannot by the proprietor thereof be kept open for any business purpose therein, and a person who engages in the business of carrying on a saloon where liquors are sold must, at his peril, see that no necessity exists for keeping the saloon open by carrying on any other business therein which would require the doors to be open, or for persons to enter therein.    If he keeps it open so that the public can enter if they choose, no matter for what pur-

pose he keeps it open, it is a violation of the statute. To
the charge as above given the defendant excepted.

The court further instructed the jury as follows:

" In this case it is claimed, on the part of the people, that
the whole lower floor of the building occupied by the respond-
ent constituted the saloon, including both the front room and .
two back rooms. It is claimed on the part of the respondent
that the front room of the lower floor of the building consti-
tuted the saloon, and that the room back of the room in .which
the bar was located, and having a door opening back of the .
building constituted no part of this saloon. If this back room
was not used in connection with the room in which the bar
was situated, then it would not constitute a part of the saloon;
but if, on the other hand, you find from the evidence in this
case that this back room, having a door opening out back of
the building, was habitually used by the respondent's consent
for the purpose of playing cards by persons resorting there,
and that liquors were served from the bar to such persons
while in that room, then it was used in connection with the
room containing the bar, and as a matter of law constituted
a part of the saloon. If the back room was a part of the
saloon, then keeping it open Sunday by the proprietor was a
violation of this law."                           •

(And to which said charge, as above stated, said counsel of
said defendant did then and there except.)

" If it was not a part of this saloon, then keeping it open
would not violate this statute."

And the said counsel then and there requested the said
court to charge the said jury as follows:

" *First.* Before the jury would be authorized to find a ver-
dict of guilty, they must be convinced by the evidence in the
case, beyond a reasonable doubt, that the respondent kept his
saloon open, and not closed, on Sunday, the 14th of October
last. By the term ' saloon' is meant the room or place where
the bar is located, and where spirituous and intoxicating
liquor is sold or kept for sale at retail."

And the said court then and there refused to give the same.

(To which refusal of the court the said counsel for the said defendant then and there excepted.)

And the said circuit court then and there qualified the said request by erasing or striking out the words " where the bar is located," and adding thereto the following words : " where such liquors are dealt out and drank, be it one room or many, and is not necessarily confined to the room where the bar is located."

(And to which qualification of the said charge the said counsel for the said defendant did then and there except.)

And the said defendant did then and there request the said court to charge the said jury as follows: " It is claimed by the respondent that the front room described by the witnesses is the saloon proper,—that is, it being the only room where spirituous and intoxicating liquors are kept for sale by the respondent at retail,—and that when that room is closed all access to the place where spirituous, intoxicating and malt liquors are kept for sale at retail is effectually cut off. Now, I charge you, if you find such to be the fact, and that by the closing of the front room all means of ingress and egress to the place where he kept, or where there was kept, liquor for sale at retail would be cut off, then the opening of the back room, even if he did open it to the public, would not be a violation of this law."

(Which request said court refused, and defendant excepted.)

It is the failure to give this last request that counsel for respondent relies upon as error.  He urges that the object of the law is to prevent the sale of liquors on certain days and at certain particular hours, and not to prevent persons from keeping certain portions of their business premises open on Sunday, where no possible infraction of the statute in question can be made, but to prevent liquor being sold at certain times ; and that it was fairly a question for the jury whether or not the saloon was open, and, if open, how open ; and counsel for respondent insists that this request to charge, in view of the evidence in the case, ought to have been given. It was fairly a question for the jury to determine whether or not the saloon was open on the Sunday charged ; but if

they should find the fact that he kept the saloon open on that day, it was of no sort of consequence how it was kept open. We held in *People v. Waldvogel* 49 Mich. 337, that keeping a saloon open on Sunday, although for the purpose of cleaning or scrubbing it out, was a violation of the statute. There are no qualifying words in the statute, and no exceptions in favor of any business, whether foreign to the business of saloon keeping or not, the object of the statute being to cut off all subterfuges or excuses for violation of the statutory inhibition.

We do not think the respondent was entitled to the other special instruction asked, under the evidence in this case. The evidence was uncontradicted that the only business carried on by respondent was keeping a saloon, and that for this purpose he used the three rooms upon the ground floor of his building. The record states that it was conceded that the back rooms were habitually used for playing at cards, and as places where liquors were served to customers of respondent, and were used in connection with the front room for the accommodation of his customers. Under this evidence and concession, the charge of the court was proper, and was as favorable to the defendant as the facts warranted. Had the facts shown that respondent carried on the business of saloon and restaurant keeper in the same premises, but so arranged that the saloon part could be and was entirely shut off from the restaurant, and that the latter alone was kept open on the Sunday stated in the complaint, quite another question would have been presented for consideration ; but that is not now before us upon this record.

The exceptions are overruled, and the circuit court directed to proceed to judgment.

The other Justices concurred.