# THE PEOPLE v. JOHN COX.

*Criminal law—Liquor traffic—Failure to keep saloon closed on Sunday—Living rooms as part of saloon—Charge to jury—Reasonable doubt.*

1. It is not necessary in a prosecution for a violation of section 17 of Act No. 313, Laws of 1887, requiring saloons to be closed on Sunday, to prove that any liquor was sold.

2. The statute (Act No. 313, Laws of 1887, § 17) requiring saloons to be closed on Sunday contemplates but a *single* offense on the *same* day.

3. The reception of testimony on rebuttal, which should have been offered on the main case, is generally within the discretion of the court, the exercise of which, if not abused to the prejudice of the respondent, will not be interfered with.

4. If one engages in the sale of liquors, and sees fit to connect his saloon proper or bar-room by inward doors and halls with his sitting or living rooms, and permits others than members of his family to pass from the outside into such living rooms, and from thence to the bar-room to obtain liquors, or to pass from his bar-room out through such living rooms, and to occasionally drink liquors therein, with his approval and consent, he must be considered as making said living rooms a part of his saloon in the eye of the law ; and he cannot upon Sunday, if such is his practice on week days, open said living rooms to the public, or allow drunken persons or others seeking liquor to enter therein.

5. A reasonable doubt must be a fair one, "based upon reason and common sense." *People v. Finley,* 38 Mich. 482 ; *People v. Stubenvoll,* 62 Id. 329.

Exceptions taken before judgment from Jackson. (Gridley, J.) Argued April 25, 1888. Decided May 11, 1888

Respondent was convicted of *not* keeping his saloon *closed* on Sunday. Conviction affirmed The facts are stated in the opinion.

*Gibson & Parkinson,* for respondent.

*Moses Taggart*, Attorney General, *Eugene Pringle*, Prosecuting Attorney, and *B. W. Shoemaker*, Assistant Prosecuting Attorney, for the people.

[The points of counsel are fully stated in the opinion.— REPORTER.]

MORSE, J. The respondent kept a saloon in the city of Jackson, on Cortland street. He was not married, but hired a housekeeper, and his father lived with him. The rooms over the saloon were used as sleeping rooms. The first or lower story of the building was divided into rooms and halls as follows: First, a front room, known as the " bar-room," with a front door, the only one opening upon the street from that room. A door in the back part of the bar-room opened into a hall. Upon the left of this hall was a card-room. Back of that another room used as a kitchen.

There were no doors from the outside into either the card-room or kitchen. Both were reached from the hall. To the right of the hall, and opposite the kitchen, was a store-room, under the stairs leading to the upper story of the building. In this store-room, having no cellar, the respondent kept beer in kegs. When he wanted beer for his customers he drew it from these kegs into bottles, and carried it in the bottles into his bar-room. Back of this kitchen and store-room is a dining-room, a large room, having an outside door upon each side, not far from the partition between it and the other rooms, and also a back door.

The respondent was tried and convicted in the Jackson county circuit court upon an information charging him, on November 20, 1887, Sunday, with keeping open his saloon, or, in the language of the information, that he—

" Did not keep said saloon and bar and other places in the same building closed on November 20, 1887, said day being the first day of the week, commonly called ' Sunday,' but did keep the said saloon, bar, and other places in the

said building open on said day, the said John Cox not being then and there a druggist," etc.   See section 17, Act No. 313, Laws of 1887.

Evidence was offered and permitted to be given showing different times during the day when the place was open, and people inside.   The first witness for the people, one John Gessner, testified that he entered the respondent's place at the back door about 9 o'clock A. M.   The door was not locked.

"The defendant was there, and Nellie Cox and four men "

He was then asked:

"Was you in there again the same day?"

This question was objected to on the ground that by the testimony of the witness one specific act had been fixed, and that any repetition would be a distinct and separate act under the statute, and therefore not admissible, being evidence of another and separate offense.   The objection was overruled.

The counsel for the respondent insists that this was error.

He claims that "not keeping closed" means that the saloon "was open," and that as many separate and distinct offenses can be committed on Sunday under the statute as there are times that the saloon is found open or proven to have been opened.   He bases his argument principally upon section 7 of the act, which provides that—

"Each violation of any of the provisions of this act shall be construed to constitute a separate and complete offense, and for each violation on the *same* day, or on different days, the person or persons offending shall be liable to the penalties and forfeitures herein provided."

It is not necessary, under section 17 of this act, to prove that any liquor was sold.   Both sections 7 and 17 are similar to the law of 1881 in defining the offenses and penalties. See Act No. 259, Laws of 1881, §§ 5, 6 (How. Stat. §§ 2274, 2275).   The offense of keeping a saloon not closed or open, under the statute *last* cited, has been passed upon by this

Court in a number of cases. In *People v. Blake*, 52 Mich. 566 (18 N. W. Rep. 360); *People v. Higgins*, 56 Id. 159 (22 N. W. Rep. 309); *People v. Baumann*, 52 Id. 584 (18 N. W. Rep. 369); and *People v. Cummerford*, 58 Id. 328 (25 N. W. Rep. 203), the testimony showed, as in this case, persons in and frequenting the places where liquor was sold several times during the day or night.

We are all of the opinion that the law contemplates but a single offense upon Sunday. The saloon-is to be closed all day, and the opening of the same once or a dozen times is the same in the eye of the law. If it is not closed all day, the law is infracted, and if it is open all day the law is broken. The statute is violated by its not being closed, and the law does not ordinarily divide a day unless the intent of the Legislature is clear. If we should hold otherwise, it might be difficult in proof to separate the offenses, and make them distinct one from the other, and a man might be convicted and fined several times for opening his saloon several times for a few moments to give one man a drink and then closing it again, while one who keeps his place notoriously open from morning to night, accessible to everybody, and full of people drinking and carousing all day, could only be punished for one offense under the law.

Section 7 evidently was intended to apply to violations of the act for the selling of the liquors where each sale is an infraction of the law and punished as a separate offense, such as the sale to minors, persons in the habit of getting intoxicated, and the like. In such cases the day or time is not material. It is the sale to the person that is prohibited, and a man may sell to twenty or more of such persons in one day and be punished for each individual sale.

It is also claimed that the court erred in permitting a witness, John Boyle, to testify upon rebuttal to his visiting the saloon in the evening, and to state whom he saw there. It is argued that this evidence should have been offered upon

the examination in chief, as the main case of the prosecution consisted in showing the saloon open, and other persons therein besides the respondent and his family

The defense had introduced one Snyder, who testified that he went to the saloon on Sunday forenoon and tried to get some beer, and defendant refused to furnish him any. He also testified on behalf of the prosecution on the direct part of the case that he went there on Sunday evening with Boyle, and saw certain persons there.

The circuit judge, on the rebuttal, allowed Boyle to testify whether or not there were other persons there than those specified by Snyder. This was the extent of the evidence.

Boyle should have more properly been sworn when the people made their case, as his testimony did not tend to rebut anything that had been sworn to by Snyder, when he was a witness for the defense. But such matters are generally within the discretion of the court, and will not be interfered with unless the discretion is abused to the prejudice of the respondent.

As Snyder testified that one person besides the family was there, which would be a violation of the statute as much as if a dozen were there, it cannot be seen how the respondent could have been harmed by the testimony of Boyle that more than that were there. We do not feel justified in reversing the judgment for this reason alone

The court was requested to instruct the jury as follows·

"2. That if the bar and its supplies and the appliances of the business of liquor selling were in rooms distinct from others, and the latter were used as the place of residence of the defendant, he would have a right to keep the latter open, and to make use of them for living purposes on Sunday as well as on other days.

"3. The mere fact that persons did occasionally pass through the rear or sitting-room to reach the bar-room on week days does not make the defendant guilty on account of making lawful use as a dwelling-house of these rooms, and in keeping them open on Sunday as on other days.

"4. There is no evidence that the rooms so open on the Sunday in question were used or occupied as a part of the saloon, and for the carrying on of the liquor business.

"5. If the fourth request be not given, then the court is requested to instruct the jury that occasionally allowing persons to pass through the rear room to the bar-room, or even to sit down in one of the rear rooms and drink liquor furnished from the bar at times when such sales are lawful, would not make the defendant guilty of a violation of the law in not closing such rooms on Sunday, if he used them for dwelling purposes, and they were kept actually shut off from the bar-room, and place where liquors were kept, on Sunday, and at times when said saloon is required to be kept closed.

"6. An occasional use of said rooms in which to drink liquor furnished to be there drunk does not of itself make them such a part of the saloon or so connected with the business that keeping them open as a place of residence and for living purposes, on Sunday, would make the defendant guilty, provided that they were kept shut off from all connections and use with or as a part of the place where the liquors are usually kept and sold, and were not allowed to be used for unlawful sales or use of liquors on Sunday, or at times when sales are forbidden, and the saloon or bar-room proper was also kept closed at the time the offense is charged to have been committed."

The court gave the second request, with the modification by inserting the word "merely" after the words "residence of the defendant" and before the words "he would have," and refused the others.

The *substance* of the charge of the court in reference to these requests was as follows:

"I charge you that if these rooms were kept and used as accessory to the principal room, the front room, for the purpose of carrying on this business, why then they would all of them constitute a part of the saloon. And I charge you that this would be the case even though the party lived in the rear room, and occupied it for other purposes as well as for the purposes of a saloon. In other words, that must have been for the exclusive use of himself as a family residence, or for some purpose not connected with the saloon itself. But if it was used in connection with the front rooms, in whole or

in part, as a parcel of the saloon itself, then it would constitute part of the place, and the keeping of it open on Sunday would constitute it a portion of the saloon. It is connected directly by doors, leading from the one place to the other; a door out of the room which is called the 'bar-room proper,' leading from this hall by another door into this room in the rear, which was immediately open to the outside by the rear door.

"You have also the testimony concerning the little hall there, and the place where the liquors were stored. If these rooms, or any of them, were used in whole or in part as a place to carry on this business in there, it was a part of the saloon, and the keeping them open, even though the party might have had a residence in one room, in a rear room, and used as a place for dealing out liquor or keeping it there for his customers, who are in the habit of visiting the place for the purpose of buying liquors, and keeping it as such, then it would be a part of the saloon

"But if it were used exclusively for some other purpose, and not for the purpose of selling liquors in them, or for the entertainment of guests or persons who were there for the purpose of procuring liquors, then it would not be a part of the saloon, and the party would be at liberty to occupy that place on Sunday, and keep it open, or allow it to remain open and not close it, the same as any other man would his dwelling or any other place where liquor was not sold or any of the accompaniments of a business of this kind were carried on, and in connection with this I give you the second request of the defendant, with a slight change: That if the bar and its supplies and the appliances of the business of liquor selling were in rooms distinct from others, and the latter were used as a place of residence of the defendant merely, then he would have had a right to keep the latter open, and to make use of them for living purposes on Sunday as well as on other days. Now, under this view of this subject you will determine what the proof shows concerning this."

And after further stating that if they believed one of the witnesses, Gessner, who testified that he got liquor there that day where it was stored in the closet, they must convict the respondent, the circuit judge further charged them as to these rooms as follows:

"And as you may find in this regard, of course your ver-

dict should be, if you find that these rooms, aside from the testimony of the witness Gessner,—if you shall find that these rooms, or this particular room, called the 'sitting-room,' the room where were the table and the chairs and the stove, if it was kept exclusively or merely for the purpose of residence, or to resort to for any legitimate purpose, and not in connection with the saloon proper, the front rooms of the building or the rooms where the liquors were kept, or where they were usually drunk, then, as a matter of course, the party, as I told you before, had a right to maintain that as such, and to allow it to remain open, and not close it, the same as any person might have any dwelling he might reside in or any place of other business where there was not liquors sold as is provided for in this statute.

"But if it was kept, that room or any others, for the purpose of dealing out drinks therein, or bringing drinks to their customers, or allowing the people who visit this place to sit in there as such as customers there, then it is my opinion it would be a part of the saloon, and the keeping of it open, or not closing it, would be a violation of this statute; and it will be for you, therefore, to determine from all the evidence in the case what the nature of the business that was carried on in this rear room, or what it was really kept for, in whole or in part; and if it should be found to be exclusively for the use of family purposes, or any other legitimate purpose, why then the party has a right to reside there, and to stay there, and to keep it open exactly as he would any other place where there was no liquor sold.

"But on the other hand, as I have already said, if it was a part of the premises for the purpose of carrying on the saloon, and was used for that purpose either by way of dealing out the drinks therein, or keeping it in connection with the room where the liquors were kept and sold, and customers waited on there, or resorted there for the purpose of buying and drinking, as they do customarily in such places, then it would be a part of the saloon; and the opening it or the not keeping it closed would be a violation of the law."

Gessner testified that he entered the sitting or dining room by the back door, which was not locked, went into the kitchen, and into the hall way, and drank beer with other men, and also with a woman. They got the beer from the closet. He also purchased of the respondent a bottle of whisky, which bottle was the one produced in court. Got

the whisky also in the closet. He and a woman, Mary Burgette, were arrested in respondent's sitting-room on account of a fight at another place from which he and the woman had just come.

The other witnesses for the prosecution entered the sitting or dining room by the rear or side doors of that room, and saw persons besides the family in the room. The room was furnished with a stove, table, chairs, and a lounge. None of them, save Gessner, testified to being in the other rooms or seeing the doors open leading thereto. One of them, Snyder, thought Gessner was the worse for drink, and the woman quite drunk, when they were arrested in this room. Evidence was given, under objection, that Gessner was searched at police headquarters, and a bottle of whisky found upon his person. Gessner testified that he bought it Sunday at Cox's.

The testimony upon the part of the defendant was to the effect that the bar-room doors were fastened all of the day, that the store-room was also kept locked all day, and is not used at any time for any other purpose connected with the saloon than storing beer therein, putting it in bottles and carrying it therefrom to the bar-room as it is wanted; that the respondent did not furnish liquor of any kind to Gessner.

The defendant testified in his own behalf that no liquors were ever served in the back rooms at any time.

It is contended by the counsel for the respondent that the mere fact that persons who are acquainted with the family, on days when it is lawful to sell liquor, before or after buying drinks, enter the residence portion of the building, going to or from the saloon part, or even sit down and have drinks served to them therein, does not deprive the residence rooms of their character as a dwelling so that such rooms must be closed on Sunday.

We think the court was correct in his charge. There cannot be in safety, and with the view of securing the proper

enforcement of this law, any distinction made between the act of serving liquors occasionally in such rooms, and the habit of using them almost continuously for such purposes. If one engages in the sale of liquors, and sees fit to connect his saloon proper or bar-room by inward doors and halls with his sitting or living rooms, and permits others than his family to pass from the outside into such living rooms, and from thence to the bar-room to obtain liquors, or to pass from his bar-room out through such living rooms, and to occasionally drink liquors therein, with his approval and consent, he must be considered as making said living rooms a part of his saloon in the eye of the law. He cannot, upon Sunday, if such is his practice on week days, open said living rooms to the public, or allow drunken persons or others seeking liquor to enter therein.

It is further objected that the charge of the court upon the question of reasonable doubt was misleading. The circuit judge said in substance that a reasonable doubt was not every doubt that a man might have about the truth of a thing, that it was not one that was merely fanciful or imaginary,—

"But it must be one built upon substantiality, have a substantial basis to it, such a doubt as honest men in their best judgment and in the weight that shall be given to it, whether the tendency of it is to lead the mind reasonably and honestly and fairly to doubt whether the party is guilty or not. If that doubt exists in the mind, then, as a matter of course, it goes to the benefit of the defendant, and he is entitled to the credit of it, and entitled to a verdict of not guilty, precisely the same way as if the proofs showed conclusively the innocence of the party.    *    *    *    In other words, if there is any reasonable theory of innocence, as well as that of guilt, then the presumption is in favor of the innocence of the party, and not of his guilt."

The objection is made to the use of the ·phrases, "but it must be one *built* upon substantiality, have a substantial basis to it." It is claimed that this definition presumes that the

doubt must be built upon evidence in the case, while in fact a reasonable doubt need not have any " substantial basis ;" that such doubt arises rather from a lack of sufficiently substantial evidence or basis for belief to rest upon.

"It is not *something* that necessarily leads the mind to doubt, but is absence of that proof which would create in the mind a belief to a moral certainty, and exclude every reasonable doubt."

It is not easy to define a " reasonable doubt." In most cases it is as well, if not better, to leave it undefined save as the words themselves carry their own definition. An examination of the case of the *People v. Stubenvoll*, 62 Mich. 329 (28 N. W. Rep. 883), and the cases in our State therein cited, will show that the circuit judge did not err in his definition. A reasonable doubt must be a fair one, " based upon reason and common sense." *People v. Finley*, 38 Mich. 482. A doubt must be built upon something. It cannot stand without any basis, and the basis must be something substantial in the sense that it is not based on fancy or imagination or caprice. It may be based on the evidence or the want of evidence in the case.

We do not think the language of the court open to the supposition that the doubt, as he defined it, must be based upon the evidence in the case. We are unable to discover any error in the proceedings, and the conviction must be affirmed.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.