THE PEOPLE v. JACOB BELLER.

*Liquor traffic—Maintenance of bar in garden used as pleasure resort—Failure to close bar on Sunday.*

1. It is incumbent on the keeper of a garden used as a pleasure resort, in which he maintains a bar at which intoxicating liquors are sold on week-days, to close access to the bar *completely* on Sunday, either by closing the bar itself or the garden.

2. The object of the Sunday clause in the liquor law is not merely to punish the sale of intoxicating liquor from the bar, but to

remove the danger that advantage might be taken of its being open to sell clandestinely what on other days is sold openly.

3. Access to the bar might easily be access to what is usually sold there, and the means of detection would not be adequate if proof of the character of the liquor sold on Sunday must be found in all cases.   If the bar *itself* is closed *completely* to access, or the room containing it is closed, where it is within a larger room, the end of the law is attained, and not otherwise.

Error to recorder's court of Detroit.    (Swift, J.) Argued January 29, 1889.   Decided February 1, 1889.

Information for not keeping closed on Sunday a bar where intoxicating liquors are sold.   Conviction affirmed. The facts are stated in the opinion.

*George X. M. Collier,* for respondent.

*George F. Robison,* Prosecuting Attorney, for the people.

CAMPBELL, J.    Respondent was convicted under section 17 of the liquor law of 1887, making it unlawful to have open on Sundays—

" All saloons, restaurants, bars in taverns or elsewhere, and all other places, except drug-stores, where any of the liquors mentioned in this act are sold or kept for sale, either at wholesale or retail."

The charge in the information was that he kept open the bar in his garden on Jefferson avenue, in the city of Detroit, where intoxicating liquors were sold at retail. The testimony which the jurors were allowed to act on tended to show that he had a garden connected with a dock and bath-houses, and adjacent to a building in which he had always a permanent bar for the sale of liquors; that the garden was resorted to in pleasant weather for recreation, having seats and other conven-

73 MICH.—41.

iences for visitors; and that in summer, and when it was warm enough, there was a separate bar from which liquors and refreshments were sold at some distance from the house, where the permanent bar was located. On the Sunday in question the garden was open as usual, and the garden bar was also open, and a drink which is claimed to have been made of barley and perhaps some other ingredients, and which, as insisted, was not an intoxicating liquor, was the only liquor sold. It was drawn from a keg with a faucet, and this stood in or behind the bar. The court charged the jury that if intoxicating liquors were sold in this place on other days than Sunday, and people were permitted. on the Sunday in question to go there and drink beer, or anything else, then the garden was not closed, within the meaning of the statute; or, if they sold intoxicating liquor there on that day, defendant was guilty.

The language of the judge, speaking of not closing the garden, might have been liable to some exception if there had been any room for misapprehension. In one sense the garden itself was a place where liquor was sold, but it was not treated on the trial as the place contemplated by the statute, which rather contemplates some building or receptacle, large or small, which may be closed to access, and not an indefinitely large open space to which the build-ing is an adjunct. The information related only to the bar within the garden, and all the testimony referred to that as the place from which liquor was handed out to be served to persons scattered through the garden. We do not think there was any room for the supposition on the part of the jury that keeping the garden open would be within the law, unless the place in it where liquor was dispensed during the week was also open. That this bar was such a place as the law was meant to cover was indi-

cated by the evidence. The testimony tended to show that it was used just as ordinary bars are used, and adapted for the same purposes. The liquor sold was furnished as beer and similar drinks would be, and with the same facilities for substitution. The object of the Sunday clause in the law is not merely to punish the sale of intoxicating liquor from the bar, but to remove the danger that advantage might be taken of its being open to sell clandestinely what in other days is sold openly. Access to the bar might easily be access to what is usually sold there, and the means of detection would not be adequate if proof of the character of the liquor sold on Sunday must be found in all cases. No one but the owner can know, without search, when and how he supplies his bar with liquors, and where he puts them. If the bar itself is closed completely to access, or the room containing it is closed, where it is within a larger room, the end of the law is attained, and not otherwise. But if the garden bar was kept open, the only way to prevent access to it would have been to shut the garden itself; and as the bar was confessedly open, and the drinks sold were dispensed from it, the language of the judge was well enough, and could harm no one. It was incumbent on respondent to close access to his bar completely, in one way or the other.

The garden itself may have been, and apparently was, an entirely harmless place of resort, and with the bar closed would be as exempt from interference as any other open air resort. We do not think the record indicates any purpose of holding to the contrary, as counsel seem to have supposed. Upon the testimony there was no particular dispute, except concerning the quality of the particular drink sold on that Sunday. It was shown without contradiction that intoxicating liquors were sold at the garden bar during week-days. No other conclusion

could reasonably have been reached by the jury on that point.

We do not think the conviction should be disturbed.

The other Justices concurred.