## The People v. Harry James.

*Liquor traffic—Saloon open after hours.*

Respondent was convicted of keeping open his saloon after the hour of 11 o'clock in the evening, in violation of the statute. On the trial he testified that he closed the saloon at 11 o'clock on the evening in question (Saturday); that his bartender and a third person remained in the saloon with him for the purpose of "cleaning up the place,—scrubbing the floor, cleaning the glasses, and fixing the things up all right for Monday morning;" that when they got through they went out at the back door, and locked it; that no one was admitted to the saloon during the time they remained there; that no liquor was sold there; but that the parties took one drink when they went away. And it is held that under the evidence there was a clear violation of the statute.[1]

Exceptions before judgment from Marquette. (Stone, J.) Submitted on briefs April 25, 1894. Decided June 2, 1894.

Respondent was convicted of keeping his saloon open after hours. Conviction affirmed. The facts are stated in the opinion.

*E. J. Mapes*, for respondent.

[1] See note at end of opinion.

*A. A. Ellis,* Attorney General, and *H. O. Young,* Prosecuting Attorney, for the people.

LONG, J.   Respondent was convicted of keeping open his saloon after the hour of 11 o'clock in the evening.

The people's testimony showed that the respondent kept a saloon where spirituous and malt liquors were sold.   A policeman and the marshal and deputy marshal testified that on the evening charged, between 11 and 12 o'clock, they passed the place, and heard voices in the saloon, from which they judged that four or five persons were in there, and they heard the glasses rattling.   The respondent's case is stated in the record as follows:

" The testimony of the defendant, taken at his request on the examination, was introduced in evidence, and is as follows:

" ' Myself, barkeeper, and Dennis Caples were in my saloon, scrubbing, from 11 o'clock until 12 o'clock, on the night in question.   We left at 12 o'clock.   Dennis Caples was not in my employment.   He stayed there with us. No one else was in.   We had only one drink at that time. We had a night cap when we left.'

" The defendant, being sworn, testified:

" ' The 22d of April was Saturday.   I closed my saloon at 11 o'clock.   My bartender and Dennis Caples, I think his name is, stayed in my place with me after that time.

" ' Q. What did you stay there for?

" ' A. Cleaning up the place,—scrubbing the floor, and cleaning the glasses, and fixing the things up all right for Monday morning.   When we got through we went out the back door, and locked it up.   No one was admitted to the saloon from the time I closed it, at 11 o'clock, to the time I left.   No liquor was sold there.   I stopped there for the purpose of cleaning the place up, and not for the purpose of selling liquor.'

" On cross-examination, the defendant testified:

" ' We took one drink when we went away, as I told you before.   Dennis Caples is a dealer in pop; you bet he is.   He helped us scrub out.' "

The court below instructed the jury as follows:

"In disposing of this case, in the opinion of the court, the testimony of the respondent shows that there was a violation of the law here, what may be termed somewhat technical, but it is a clear violation of the law, in my judgment. The law requires these places—saloons—to be closed after 11 o'clock; and it seems to me that where the public, or any part of the public, are permitted to stay in the saloon, if the doors are closed, and drinking takes place especially, that it cannot be said that the saloon is closed within the meaning of the statute.

"It appearing by the undisputed testimony of the respondent that Mr. Caples was there in the saloon, and took a drink with him and his bartender, and that he and Caples and the bartender were there for some time after 11 o'clock, then there was a clear violation of the statute. That is my judgment about it, gentlemen.

"You will go to your room, and see whether you find a verdict of guilty or not guilty."

We think the charge was proper, under the evidence. The case is ruled by *Kurtz v. People,* 33 Mich. 279; *People v. Cummerford,* 58 Id. 328; *People v. Waldvogel,* 49 Id. 337; *People v. Blake,* 52 Id. 566; *People v. Crowley,* 90 Id. 366.

The conviction is affirmed.

The other Justices concurred.

---

CLOSING OF SALOONS ON SUNDAY, ON LEGAL HOLIDAYS, AND AFTER A DESIGNATED HOUR ON WEEK-DAY NIGHTS.

The following note summarizes the legislation and collects the cases bearing upon the subject suggested in the above heading:

*Summary of Legislation.*

1. Act No. 231, Laws of 1875, taking effect August 3, 1875, provided that all saloons, restaurants, bars, bar-rooms, in taverns or elsewhere, and all places of public resort where intoxicating liquors were sold, either at wholesale or retail, should, unless otherwise determined and directed by the proper municipal authorities, be closed on Sunday, and on week-day nights from and after the hour of 11 o'clock until 6 o'clock of the following morning.

2. Act No. 193, Laws of 1877, taking effect May 22, 1877, provided that all saloons, restaurants, bars, in taverns or elsewhere, and all other places where malt, spirituous, or intoxicating liquors were sold, either at wholesale or retail, should be closed on Sunday, and on each week-day night from and after the hour of 10 o'clock until 6 o'clock of the morning of the succeeding day: *Provided,* that, in all cities and incorporated villages, the places named might remain open until not later than 11 o'clock of such week-

day nights, unless ordered sooner closed by the proper municipal authorities.

3. Act No. 267, Laws of 1879, taking effect August 30, 1879, changed the 1877 law by adding, as days when saloons, etc., should be closed, "election days or legal holidays," and by prohibiting the sale or gift of malt, spirituous, or intoxicating liquors at any time during such days, and by fixing the hour for closing at 9 o'clock at night, with the right to remain open until 10 o'clock, unless ordered sooner closed by the proper city or village authorities.

4. Act No. 259, Laws of 1881, taking effect September 10, 1881, provided that all saloons, etc., and all other places where any of the liquors mentioned in sections 1 and 2 of the act might be sold or kept for sale, either at wholesale or retail, should be closed on Sunday, on all election days, on all legal holidays, and until 7 o'clock of the following morning, and on each week-day night from and after 9 o'clock until 7 o'clock of the following morning; that the word "closed" should be construed to apply to the back door as well as to the front door; that in prosecutions for violations of said provisions it should not be necessary to prove that any liquor was sold; and that in all cities and incorporated villages the common council might, by ordinance, allow saloons and other places where said liquors should be sold to remain open not later than 10 o'clock on any such week-day night.

5. Act No. 313, Laws of 1887, taking effect September 28, 1887, and now in force (3 How. Stat. § 2283c4 et seq.), provides that all saloons, restaurants, bars, in taverns or elsewhere, and all other places, except drug-stores, where any of the liquors mentioned in said act are sold or kept for sale, either at wholesale or retail, shall be closed on Sunday, on all election days, on all· legal holidays, and until 7 o'clock of the following morning, and on each week-day night from and after the hour of 9 o'clock until 7 o'clock of the morning of· the succeeding day; that the word "closed" shall be construed to apply to the back door or other entrance, as well as to the front door; that in prosecutions under this section it shall not be necessary to prove that any liquor was sold; and that the proper authorities in cities and incorporated villages may, by ordinance, allow the saloons and other places where said liquors shall be sold to open at 6 o'clock in the forenoon, and to remain open not later than 11 o'clock, and no longer, of any week-day night, except on election days and holidays.

6. Act No. 213, Laws of 1889, which attempted to repeal the 1887 law, was held unconstitutional in Rode v. Phelps, 80 Mich. 598, and the 1887 law declared to be in full force.

For cases bearing upon the proper construction of and practice under the provisions above summarized, see:

*What Constitutes a Saloon Within the Meaning of the Statute.*

1. *People v. Higgins*, 56 Mich. 159, where a saloon-keeper occupied three rooms on the ground floor of his building for that business, and lived over them. The rooms opened into one another from front to rear, and the rear room had an outer door. The bar was in the front room, which faced the street, and the other rooms were habitually used for card playing, and as places where liquors were served to customers in connection with the front room, between which and the rear rooms, near the bar, there was a hole in the wall. And it was held that the rear room consti-

tuted a part of the saloon, and keeping it open on Sunday by the proprietor was a violation of the statute.

2. *People v. Scranton*, 61 Mich. 244, where the evidence disclosed that the respondents carried on their business in a building containing three rooms on the ground floor, one used for the sale of tobacco and cigars, one for the sale of liquor, and one as a card room; that the cigar and tobacco room was in the front end of the building, facing the street; that over the front door was the word "saloon;" that this room was divided from the one where liquor was sold by a partition, in which were two doors, one near the center, and the other opening into the liquor room from behind the tobacco counter; that the card room was in the rear; and that the only way of entering the liquor room was from the tobacco and cigar room or by the back door of the building. And it was held that it was properly left to the jury to say what rooms constituted respondents' saloon.

3. *People v. Cox*, 70 Mich. 247, holding that if a saloon-keeper sees fit to connect his saloon proper or bar-room by inward doors and halls with his sitting or living rooms, and permits others than members of his family to pass from the outside into such living rooms, and from thence to the bar-room to obtain liquors, or to pass from his bar-room out through such living rooms, and to occasionally drink liquor therein, with his approval and consent, he must be considered as making said living rooms a part of his saloon in the eye of the law, and he cannot upon Sunday, if such is his practice on week days, open said living rooms to the public, or allow drunken persons or others seeking liquor to enter therein.

4. *People v. Hughes*, 90 Mich. 368, holding:

a—That the question whether rooms connected with a bar-room, and in which liquors are served and imbibed when the bar is lawfully open, must not be regarded as parts of the saloon, under the closing act, is no longer an open one under the decisions of this Court.

b—A saloon-keeper occupied two store buildings, in one of which was a bar, and another room in which liquor was served when the bar was open. The other building contained his office and a billiard room, and the buildings, as also the rooms in each, were connected by archways. On Sunday the bar was closed, and separated from the other rooms by damask curtains and barricades, and no liquors were dispensed in the other rooms. The proprietor was a bachelor, and spent his Sundays in the office, and received his friends there, which is held a violation of the Sunday-closing law.

5. *People v. Ringsted*, 90 Mich. 371, holding that a room connected with a saloon, where sales of liquor can be made on Sundays and after hours, and where liquors are served from the saloon on week days, is a part of the saloon.

### *What Constitutes Closing a Saloon Within the Meaning of the Statute.*

1. *People v. Waldvogel*, 49 Mich. 337, where, on the trial of the respondent for keeping open his saloon on Sunday, it was conceded that the doors were open, and that several people were in the saloon, but it was claimed that they were in there assisting the respondent in washing and cleaning the saloon, and that no liquor was sold, nor was there any intention of selling any. And it was held that the question of intent was wholly immaterial; that the

Legislature, in order to guard against the danger of sales being made, has directed that the place where liquors are kept shall be closed, so that no opportunity to violate, by making sales, shall be afforded; that the person who engages in the business of carrying on a saloon must at his peril see that no necessity exists for keeping the same open, by carrying on any other business therein which would require the doors to be open or for persons to enter therein.

2. *People v. Roby*, 52 Mich. 577, where the respondent, who was keeper of an hotel in which there was a bar for the sale of spirituous and malt liquors, was convicted of not keeping his bar closed on Sunday, upon evidence that on the morning of that day the clerk of the hotel was in the bar-room, and had a servant with him scrubbing it out, when a person who appeared to be known to the clerk came in from the street; that the clerk told him he did not want him there Sundays; that the man said he wanted some whisky; that the clerk told him he must get his whisky Saturday night; that, after some more words between them, the clerk told him if he was going to get the whisky to get it, and get out as soon as he could; that he got the whisky, handed pay for it to the servant, and went off; that the respondent was not present, but that he was somewhere about the house; and there was no evidence that he assented to the opening of the bar on that day, or expected or desired that it should be opened, neither was there any evidence to the contrary. And it was held that, if intent was necessary to be found, there was enough in the case to warrant its submission to the jury; that the bar-room was opened on Sunday by respondent's servants, and on his business, while he was about the premises; that the purpose for which it was opened was immaterial; that the offense was committed by opening it for cleaning, as much as it would have been by opening it for the sale of liquors.

3. *People v. Cummerford*, 58 Mich. 328, where the respondent was convicted of keeping his saloon open after legal hours, and it appeared that the saloon was connected with a restaurant, kept in a separate room, opening onto another street than the saloon, but connected with it by means of a door between the saloon and restaurant, which closed with a self-acting spring, and required only a push to open it. And it was held:

*a*—That if the saloon was lighted, and the bartender behind the bar, and people were passing in and out through this door, it was a plain violation of the statute, whether any liquors were sold or not.

*b*—That if the saloon was securely locked and fastened, both at the main entrance and also at the door leading into the restaurant, and yet, after the hour for closing it, respondent and his bartender were inside furnishing drinks to others, also inside, he would be amenable to the statute, because either the persons inside must have got in after said hour, or have been left inside when the doors were closed and locked, and in either case the statute was violated.

4. *People v. Minter*, 59 Mich. 557, holding it error to instruct the jury that, if they found that respondent's saloon was opened (on a legal holiday) for any purpose whatever, they should convict, as such a rule would prevent the keeper from entering or leaving the saloon for any purpose.

5. *People v. Beller*, 73 Mich. 640, holding that it is incumbent on the keeper of a garden used as a pleasure resort, in which he

maintains a bar at which intoxicating liquors are sold on week days, to close access to the bar completely on Sunday, either by closing the bar itself or the garden.

6. *People v. Crowley*, 90 Mich. 366, holding that the testimony of a bartender that he went into the saloon on Sunday, and got a glass of beer, no one else being present, is sufficient to warrant the conviction of the keeper of the saloon for failing to keep his saloon closed on Sunday.

## *Pleading.*

1. *People v. Hobson*, 48 Mich. 27, where a complaint, in a prosecution for selling intoxicating liquor on a legal holiday, averred that the respondent kept a saloon, that he kept it open on the holiday named, and that he then and there sold spirituous and intoxicating and malt liquors; and it was objected to as insufficient, because it did not show that the respondent kept such a saloon as the statute (act of 1879) required to be closed on holidays, namely, a saloon where malt, spirituous, or intoxicating liquors were sold. And it was held that, if respondent actually sold such liquors that day in his saloon, it was for that occasion, at least, kept for that purpose, and was within the law; that the object of the statute was to prevent the sale of liquors on holidays in any place of resort for refreshments, and it was not open to the construction claimed for it.

2. *People v. Husted*, 52 Mich. 624, holding that an allegation in a complaint, under the act of 1881, that on a specified day, being a week day, the respondents did not close their saloon at the hour of 9 o'clock, but kept it open until 20 minutes past 11 o'clock in the afternoon of said day, is equivalent to saying that the respondents did not keep their saloon closed on that particular weekday night from and after the hour of 9 o'clock until 7 o'clock of the morning of the succeeding day, and is sufficient.

3. *People v. Baumann*, 52 Mich. 584, holding a complaint sufficient under the 1881 statute which averred that on the 4th day of July, 1882, being a legal holiday, at a designated village and county, the respondent, being then and there a keeper of a saloon in said village, and the same being a place where spirituous and malt liquors were sold at retail, did not keep the said saloon closed, and did then and there, on the said 4th day of July, a legal holiday, keep the said saloon open for the purpose of selling spirituous and malt liquors at retail therein, the said respondent not being then and there a druggist, nor a person whose business consisted in whole or in part of the sale of drugs and medicine, contrary to the statute, etc.

4. *People v. Richmond*, 59 Mich. 570, holding that a complaint under the act of 1881 for not keeping a saloon closed after the statutory hour need not negative any action by the common council extending the time for closing.

5. *People v. Robbins*, 70 Mich. 130, and *People v. Sullivan*, 83 Id. 355, holding that it is not necessary, in a complaint or information for keeping a saloon open contrary to the statute, to state that the respondent is not a druggist, the name in such a case distinguishing the place.

6. *People v. Ringsted*, 90 Mich. 371, holding that it is sufficient, in an information for failing to keep a saloon closed on Sunday, to aver that the saloon is situated in a designated city and county in this State.

7. *People v. Wheeler*, 96 Mich. 1, holding that a complaint alleg-

ing that the respondent was on a given day, and at a specified
city in the county where the complaint is made, the proprietor of
a place where spirituous and intoxicating liquors were by her kept
to be sold, said place not being a drug-store, and that she did·on
the day named, being the first day of the week, commonly called
"Sunday," keep her said place, where said liquors were by her
kept as aforesaid, open, and did not keep her said place of busi-
ness closed, as required by law, sufficiently charges the respondent
with a violation of the Sunday-closing statute of 1887.

### Evidence.

1. *People v. Blake*, 52 Mich. 566, holding, in a prosecution for
keeping a saloon open on Sunday, that testimony that the respond-
ent kept the saloon in question, and that the witness knew him,
tends to identify the respondent as the proprietor of the saloon.

2. *People v. Baumann*, 52 Mich. 584, holding it competent, for
the purpose of identifying the respondent as the proprietor of the
saloon, to ask a witness if he saw a license card in the saloon on
the day in question, and what it contained.

3. *People v. Cox*, 70 Mich. 247, holding that it is not neces-
sary, in a prosecution for a violation of section 17 of the 1887 law,
requiring saloons to be closed on Sunday, to prove that any liquor
was sold.

4. *People v. Ringsted*, 90 Mich. 371, holding that where, on the
trial of a saloon-keeper for failing to keep his saloon closed on
Sunday, it appears that an adjoining room, containing a temporary
bar, where liquors were served on week days, was open, it is not
necessary to show that such liquors were paid for in said room.

### Miscellaneous Cases.

1. *Kurtz v. People*, 33 Mich. 279, 282, holding that the 1875 statute
clearly intended to close up the places named against liquor selling
on Sunday, or after 11 o'clock at night; that it was clearly meant
that the sales at least should be entirely stopped, and the traffic
shut off effectually, so that drinking, and the conveniences for
drinking, should be no longer accessible, and that those who fre-
quented them for that purpose should be dispersed.

2. *People v. Blake*, 52 Mich. 566, holding that respondent's
intent in allowing his saloon to be open is immaterial, even if
the opening was the act of his bartender, and without his knowl-
edge or express authority.

3. *People v. Richmond*, 59 Mich. 570, holding that permission by
the common council under the 1881 law to keep a saloon open
later than the statutory hour was only grantable by ordinance,
applicable to all persons keeping saloons; that they were bound
to inform themselves of the conditions on which such permission
could be granted, and could not rely upon any individual permis-
sion by members of the council, even if given.

4. *People v. Robbins*, 70 Mich. 130, holding that it is a violation
of the statute to keep a saloon open on week days after the pre-
scribed hour, whether any liquor is or is not sold during the time
the saloon is unlawfully kept open.

5. *People v. Cox*, 70 Mich. 247, holding that the statute of 1887,
requiring saloons to be closed on Sunday, contemplates but a single
offense on the same day.

6. *People v. Ackerman*, 80 Mich. 588, holding:

a—That the term " all legal holidays," as used in section 17 of

100 Mich.—34.

the liquor law of 1887, includes all days set apart by the Governor or President of the United States as days for fasting and prayer, or of thanksgiving.

*b*—That the courts will take judicial notice of proclamations by the Governor or President of the United States, setting apart days for fasting and prayer or thanksgiving, and, as the same are published in the daily and weekly newspapers, it is not to be presumed that any citizen *is* ignorant of them; nor will liquor dealers, or other business men, be permitted to plead such ignorance as an excuse for a non-compliance with, or violation of, the statutes relating to legal holidays.

*c*—That all persons engaged in the sale of liquor in an open saloon on a legal holiday are made principals by section 24 of the liquor law of 1887, and all may be punished for the violation of the statute if proceeded against and convicted.