## BELL *v.* STATE.

### Opinion delivered November 26, 1906.

1. TRIAL—INSTRUCTION AS TO REASONABLE DOUBT.—It was not error in a criminal case to instruct the jury that "a reasonable doubt is not a mere captious or imaginary doubt, but a doubt voluntarily arising in your mind, after a fair and impartial consideration of all the evidence in the case, and which leaves your minds in that condition that you do not feel an abiding conviction to a moral certainty of the truth of the charge."  (Page 19.)

2. SAME—WHEN INSTRUCTION MISLEADING.—After the court had correctly instructed the jury as to the meaning of the term "reasonable doubt" in a capital case, and the jury had deliberated for 24 hours, they asked the court for further instruction on that point.  The court, after an extended definition of reasonable doubt, charged them as follows: "If you are so satisfied of defendant's guilt, it is not necessary for you to be able to put your finger on or point out the particular evidence that convinces you."  *Held* misleading, in view of the contradictory and unsatisfactory nature of the evidence upon which the verdict of guilty was based.  (Page 21.)

3. SAME—URGING JURY TO AGREE.—In concluding an instruction on the subject of reasonable doubt the court said: "It is not intended to

force you to abandon honest convictions, but to give you ample op-
portunity to exercise the high qualities of manhood becoming jurors
in an important case like this." *Held* not error. (Page 24.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,*
Judge; reversed.

### STATEMENT BY THE COURT.

The court, after the jury had been out twenty-four hours,
gave the following additional instructions over objection of de-
fendant:

"Gentlemen of the jury, all you know about this case, since
you knew nothing about it at the beginning, you have learned
from the legitimate evidence in the trial. All your impressions
and beliefs must have been derived from the same source. Now,
what do you honestly believe about the case from the evidence?
What is your belief with reference to the guilt or innocence of
the defendant? Do you have a firm, fixed and abiding belief that
he is guilty as charged, or do you not? If you have such a
firm fixed belief that the defendant is guilty, amounting to an
abiding conviction to a moral certainty, then you should convict.
If not, you should not convict. If you have a belief that the
defendant is guilty, from the evidence, then is your understand-
ing convinced and directed, and your reason and judgment satis-
fied that defendant is guilty? If so, you are satisfied to a moral
certainty or beyond a reasonable doubt, which expressions are
here used (to) denote the same state of mind. If you are not
thus satisfied, you should acquit the accused. If you are, you
should convict him. If you are so satisfied of defendant's guilt,
it is not necessary for you to be able to put your finger on or point
out the particular evidence that convinces you; and it is also true
that, if you are not so satisfied, it is not necessary that you should
be able to point out the particular matters giving rise to your
mental conditions in that respect. It is enough to convict that
on the whole case you are legally satisfied of guilt.

"I am very anxious, gentlemen, for you to reason together
honestly, conscientiously and considerately on this case, and for
you to see if you can not come to a conclusion. It is not intended
to force you to abandon honest conviction, but to give you ample
opportunity to exercise the high qualities of manhood becoming
jurors in an important case like this. You should have no pride

of opinion that would induce you to adhere to an expressed
opinion, if upon further consideration you no longer entertain
that opinion. Be true to yourself, to your consciences and to the
law, and strive earnestly and honestly to reach a just conclusion,
remembering that it is the truth we seek, and the truth only
When you have found the truth, then unhesitatingly pronounce
the truth in your verdict."

The facts are sufficiently stated in the opinion of the court.

*Sam R. Chew,* for appellant.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,*
for appellee.

RIDDICK, J., (after stating the facts.) This is an appeal by
Henry Bell from a judgment convicting him of murder in the
first degree and sentencing him to be hung. The facts, in brief,
are that one William Jones, a constable of Crawford County, was
waylaid, shot down and killed in that county on the night of the
12th day of July, 1896. The defendant, Henry Bell, and several
other negroes were arrested and charged with the crime. Bell
was afterwards indicted for murder in the first degree. On his
application a change of venue was taken to Franklin County,
where he was tried and convicted and sentenced to be hung.

The evidence tended to show that a number of men, most of
them negroes, had been engaged in gambling in the neighbor-
hood where the crime was committed, and that Jones went to the
neighborhood on the night he was killed for the purpose of
arresting some of these men. He was probably waylaid and shot
down by one or more of them, for no other motive is shown for
the crime.

The evidence points very clearly to the guilt of one of these
parties, but he fled the country and escaped. As to who the other
participants in this crime were, or whether there was another
participant, the evidence as shown in the transcript leaves it to
our minds very uncertain. There was evidence connecting de-
fendant with the crime, and, so far as we can see, evidence equal-
ly as potent which showed to the contrary. This evidence con-
necting defendant with the crime consisted of the testimony of
negroes, some of whom had been arrested and charged with the
same crime. None of this evidence is of much importance except

the testimony of one negro who testified to a confession made by the defendant. Quite a number of witnesses testified that this negro was unworthy of belief, while one witness testified that his character was as good or better than that of the average negro. No one can read this evidence and not regret that the courts should be compelled to act in a grave matter involving the life of a human being on evidence of such an unsatisfactory character. But, though the nature of this testimony is such that we cannot feel great confidence in its truthfulness, still the weight to be attached to it was a question for the jury, and it is sufficient to sustain their verdict.

A number of questions have been presented by counsel of the defendant to the different rulings of the court in giving and refusing instructions. But most of the instructions given were clearly correct, and the law of the case was, we think, well stated in the original charge of the court to the jury.

The record recites that, after the jury had been out from eight o'clock Tuesday morning until about ten o'clock Wednesday morning, they came into court and asked for further instructions on certain points, among them the question of reasonable doubt. Now, the term "reasonable doubt" defines itself as a doubt that has some reason to rest on, and as opposed to an unreasonable doubt, or one having no valid reason to support it. As all this is plainly shown by the term itself, many learned judges have expressed the opinion that nothing is gained by attempts to explain a term the meaning of which is so apparent. In commenting on this matter, Judge Thompson says that the term "reasonable doubt" was an expression adopted by the common-law judges "for the very reason that it was capable of being understood and applied by plain men in the jury box," and that in attempting to explain this expression, which needs no explanation, judges generally lose themselves in mazes of subtlety and casuistry where the mind of the ordinary juror is incapable of following them. Thompson on Trials, § 2463.

Mr. Bishop says of this expression that "there are no words plainer than 'reasonable doubt', and none so exact to the idea meant. Hence some judges, it would seem wisely, decline attempting to interpret them to the jury." Then, after remarking that negative definitions of this phrase may sometimes be

helpful, such as that it is not a whimsical, imaginary or vague doubt, but one arising out of the evidence, he proceeds to say that "of affirmative definitions we have not one which can safely be pronounced both helpful and accurate." 1 Bishop's New Crim. Proc. § 1094.

The author of a recent article on this subject has this to say: "There have been many attempts to define and interpret the term 'reasonable doubt,' as used in this connection, but it is apprehended that such attempts are futile; that the words are of plain and unmistakable meaning, and that any definition on the part of the court tends only to confuse the jury and to render uncertain an expression which, standing alone, is certain and intelligible." 23 Am. & Eng. Enc. Law (2 Ed.), 955. See also *Burt* v. *State,* 72 Miss. 408, s. c. 48 Am. St. Rep. and note; *State* v. *Reed,* 62 Me. 129; *State* v. *Rounds,* 76 Me. 124; *Hamilton* v. *People,* 29 Mich. 193; *State* v. *Sauer,* 38 Minn. 438; *Miles* v. *U. S.,* 103 U. S. 312; *People* v. *Cox,* 70 Mich. 247.

On the other hand, many courts hold it to be proper to give an instruction defining the term "reasonable doubt." And short negative definitions of the kind referred to by Bishop are no doubt harmless, and probably at times helpful. And numerous decisions have approved instructions telling the jury in substance that a reasonable doubt is not a mere imaginary or vague doubt, but a doubt arising out of the evidence or lack of evidence, so that the jury, after a careful consideration of all the evidence, do not feel morally certain that the defendant is guilty. *Benton* v. *State,* 30 Ark. 328; *Commonwealth* v. *Webster,* 5 Cush. (Mass.) 295; *People* v. *Finley,* 38 Mich. 482; *Little* v. *State,* 89 Ala. 99; 1 Blashfield on Instructions, § 295, and cases cited.

But in most cases it would probably do as well for the trial judge to simply follow the statute, and tell the jury that, before convicting the defendant, his guilt must be established beyond a reasonable doubt; that if, after a careful consideration of all the evidence, they have a reasonable doubt of his guilt, they should acquit. On the other hand, if, after such consideration, they are convinced of his guilt beyond a reasonable doubt, they should convict. But, as before stated, according to the decisions of this and most other courts, there is no error in giving instructions defining such term if correctly drawn; whether it is necessary or

advisable to give them being a matter generally left to the discretion of the trial judge.

In this case the presiding judge in his original charge said to the jury that "a reasonable doubt is not a mere captious or imaginary doubt, but a doubt voluntarily arising in your minds after a fair and impartial consideration of all the evidence in the case, and which leaves your minds in that condition that you do not feel an abiding conviction to a moral certainty of the truth of the charge." This was a very satisfactory explanation of the term, and was all that was needed, and has ample precedent to support it. *Com.* v. *Webster,* 5 Cush. 295; *Benton* v. *State,* 30 Ark. 328; *People* v. *Finley,* 38 Mich. 482; Blashfield on Instructions to Juries, §.293.

And we are of the opinion that, when the jury came in and asked for further instructions on that point, it would have been as well for the judge to have repeated this instruction, and told the jury that this was a sufficient definition of reasonable doubt, and that he could not assist them further, for the question as to whether they entertained a reasonable doubt of the defendant's guilt was one addressed to the judgment of each individual juror, which he must solve for himself in the light of the evidence and the law as given by the court, after a full discussion of the matter with his fellow jurors. But, in his desire to aid the jury in the solution of the question before them, the presiding judge gave them another instruction still further defining the term "reasonable doubt," and which is set out in the statement of facts. Now, this second attempt to do what the Supreme Court of Mississippi in a case cited above says is equivalent to painting a lily or gilding refined gold does not seem to us quite so successful as the first. It is longer than the first instruction, and by the repetition of the same idea over in different words, and by the way in which it is expressed, makes the impression of an effort to convince the jury that there was no obstacle in the way to prevent them from returning a verdict either for or against the defendant. In this instruction, after an extended definition of reasonable doubt, which, it seems to us, rather clouded than cleared the subject, he says: "If you are so satisfied of defendant's guilt, it is not necessary for you to be able to put your finger on or point out the particular evidence that convinces you; and it is also

true that if you are not so satisfied it is not necessary that you should be able to point out the particular matter giving rise to your mental condition in that respect."

Now, waiving the question as to whether the last clause in this sentence states the law correctly, it seems to us that the statement of the law contained in the first clause is not correct. The substance of it is that a jury would, if convinced of defendant's guilt beyond a reasonable doubt, be justified in finding him guilty of a capital crime, although they were not able to point out any particular evidence that convinced them of his guilt. This instruction assumes that the jury might be justified in believing that defendant was guilty beyond a reasonable doubt, although at the same time they were not able to put their finger on or point out any evidence that convinced them of that fact. Now, in this case it was conclusively shown that Jones was murdered. But the only evidence to connect the defendant with the crime was the evidence of a negro that defendant confessed to the crime and evidence that shortly before the killing he was engaged with several other negroes in "shooting craps" for money, and the testimony of a negro that he heard him whispering to one Calvin Coggs when Coggs was trying to borrow a gun on the night of the killing. If the jurors believed this evidence, there was no trouble to point out the evidence that convinced them. If they rejected it as unworthy of unbelief, they should have acquitted the defendant; for, though other witnesses testified to circumstances surrounding the killing, their evidence did not connect the defendant with the crime. But, under this instruction, the jury may have rejected this evidence, which could be readily pointed out, and founded their verdict on a belief which rested on no tangible evidence. A rule of law that permitted either a court or jury to impose the death sentence on one without being able to point out the evidence upon which the conviction rested would be as dangerous as it would be novel. Such a rule would be antagonistic to the fundamental principles of law that there must be some substantial evidence of guilt before conviction and punishment. If it was within the prerogative of a jury to find the defendant guilty without being able to put their finger on or point out the evidence that convinced them, then the same rule would apply to the court, and it might follow that one could be convicted and executed for

crime where neither the judge nor the jury were able to name the evidence that showed his guilt. The mere statement of such a rule seems sufficient to condemn it as unsound.

It may be, and probably is, true that the learned trial judge did not intend by the language quoted to convey the idea that the jury could convict without being able to say what it was that convinced them of guilt. But the trouble with this part of the instruction is that it was calculated to create this impression. Under the facts of this case where there was a mass of circumstances in proof bearing on the crime but having little or no tendency to connect defendant with it, and where his connection with it was shown mainly by a purported confession proved by a negro witness of doubtful character, we think that this instruction was both improper and prejudicial.

If this rather diffuse explanation of reasonable doubt had been given as a part of the original charge, there would be less room to complain.

But this jury, called upon to decide a case involving the life or death of the defendant on the testimony of certain witnesses; some of whom had been suspected and arrested for this very crime, and whose reputations for truth and morality were shown to be more or less bad, had remained undecided, though kept together for over twenty-four hours. This hesitation in a matter of such importance was fully justified by the contradictory and unsatisfactory nature of the evidence. Coming before the court for additional instructions under these circumstances, this further charge was given to the jury explanatory of reasonable doubt. Now, whether a juror entertains a reasonable doubt is a matter for him alone to determine. He is, to quote the language of the Supreme Court of Minnesota, "the best judge of his own feelings, and knows for himself whether he doubts better than any one else can tell him." *State* v. *Sauer,* 38 Minn. 439.

When accurate and full instructions on the whole case have been given, including a concise explanation of reasonable doubt, and when, after considering all the evidence and the instructions, the only question in the minds of the jury is whether the guilt of the defendant is established beyond a reasonable doubt, they have reached a point where little assistance can be afforded by the presiding judge, for the matter is one which they must decide

according to the dictates of their own judgment. For the judge to undertake to assist them by still further elaborating on the nature and character of reasonable doubt is more likely to mystify and confuse than to aid them. And this is another reason why we think that this instruction should not have been given.

In concluding this second charge to the jury, the judge told them that he was very anxious for them to reason together to see if they could not come to a conclusion. "It is not intended," he said, "to force you to abandon honest convictions, but to give you ample opportunity to exercise the high qualities of manhood becoming jurors in an important case like this." Counsel for the defendant contends that this language, spoken to the jury after they had remained undecided for over twenty-four hours, was too earnest an appeal to them to decide the case, and was prejudicial to defendant. It was calculated, he says, to impress too strongly upon the jury the idea that it was their duty to exercise the "high qualities of manhood" to which reference is made in the instruction, and to decide the case in some way, even at the expense of honest convictions. But we can not concur in this view. While the part of the instruction referred to, being probably hastily drawn, is somewhat vague and seems to have more eloquence than lucidity in it, yet, taken as a whole, the meaning of the instruction is clear. It was an attempt on the part of the trial judge to impress upon the jury that it was their duty to consider the case carefully and to decide it if they could do so without violating their judgments and consciences. The idea that the court intended to convey was entirely proper. While we think that, instead of telling the jury that his intention was to give them ample opportunity "to exercise the high qualities of manhood becoming jurors in case like this," it would have been simpler and perhaps better to have said that the intention was to give them ample opportunity "to consider the evidence and decide the case," still, when the instruction is taken as a whole, it is clear that this is in substance what the court meant, and no error can be based on this instruction.

For the error previously indicated the judgment is reversed, and the cause remanded for a new trial.