## No. 9078.

### McLean *v*. The People.

1. Evidence—*Judicial Notice.* As human knowledge grows with experience the state of facts upon which judicial notice will be taken are constantly increasing.

2. *Judicial Notice,* taken that Jamaica Ginger is an intoxicating liquor and a satisfactory substitute for whisky.

3. Intoxicating Liquors—*Statute Construed.* The statute (Laws 1915 c. 98) includes in its denunciations intoxicating liquors of every character now in use, or which may hereafter come into use, as a beverage, by whatever name they may be known, and however small the percentage of alcohol contained.

A compound in which alcohol is merely a vehicle for, or preservation of, other ingredients, or to extract their virtues and hold them in solution, is within the statute.

So articles which are never classed as intoxicating beverages, but the use of which are culinary, medical, or for the toilet.

And compounds in which while the alcoholic stimulant is present, are not of established name and character as a beverage, nor found in the U. S. Dispensatory, or like standard authority.

4. *Sale by Agent.* One who acts by a servant in the sale of intoxicating liquors is liable to the penalties of the statute. It being in evidence that defendant kept for sale, and himself sold, a prohibited beverage, *held* that there was no error in refusing an instruction that to charge the accused with a sale made by an agent, it must appear to have been made with his full knowledge and consent.

5. *Medical Use.* One who makes no attempt to comply with the provisions of the statute regulating the sale of intoxicating liquors as a medicine, will not be heard to assert that he sold Jamaica Ginger as a medicine.

6. *Evidence,* of sales not charged in the information is admissible.

Charge of "selling and keeping for sale"—evidence of keeping for sale will support the conviction.

7. TRIAL—*Fair Trial.* An address of the court to the jury urging an agreement, not approved, but held not error.

8. NEW TRIAL—*Affidavits of Jurors.* As to "outside influences", inducing the verdict, are disregarded.

Remarks made by the bailiff in charge of the jury disregarded, both because not shown to have been heard by a single juror, and especially because the baliff's statements were confirmed by the evidence.

9. MISCONDUCT OF BAILIFF—*Statute Construed.* The ordinary physical necessities of jurors must be provided for, the statute (Rev. Stat., sec. 1989) must receive a reasonable construction. It prohibits only communications of an improper or unnecessary character.

10. *Taxable Costs.* Neither the fees of the jury, the bailiff, nor the stenographer are to be taxed to the accused,—nor the cost of the meals furnished the jury.

11. ERROR—*Judgment,* affirmed as to a fine imposed, and reversed as to certain costs taxed against the accused.

*Error to Prowers District Court, Hon. Granby Hillyer, Judge.*

Messrs. DEVINNE & PRESTON, Mr. TODD C. STORER, Mr. ALLYN COLE, for plaintiff in error.

Hon. Leslie E. Hubbard, Attorney General, Mr. Charles Roach, Mr. Bertram B. Beshoar, Assistant Attorneys General, for The People.

Garrigues, C. J., delivered the opinion of the court.

The information charges that April 15, 1916, defendant did unlawfully sell and keep for sale intoxicating liquors, not for medicinal or sacramental purposes. Defendant, a resident of Lamar, was the proprietor of a drug store there, and kept for sale and sold Jamaica ginger after the prohibition act of 1915 went into effect January 1, 1916, which prohibited the sale of, or keeping for sale, intoxicating liquors within the state.

The evidence shows that Jamaica ginger was frequently purchased by divers persons from defendant's store to be used as a beverage; that it was so used, and that it would and did produce intoxication. Defendant claims that the court should have instructed the jury that Jamaica ginger, as a matter of law, was not an intoxicating liquor.

As human knowledge grows with experience, the facts of which judicial notice will be taken are constantly increasing. It is a matter of common knowledge that alcohol is the intoxicating element of all intoxicating liquors. We also think it has become a matter of common knowledge to all well informed men that Jamaica ginger is an intoxicating liquor, and that the court might, from the facts in this case, well have so told the jury. Its high per cent of alcohol (90%) is required to hold the ginger in solution. But it is the alcohol which retains its intoxicating effect, and not the ginger, that produces intoxication. While it is true that Jamaica ginger is manufactured to be used as a medicine and not as a drink, still it is a familiar fact that it is often used as a substitute for whiskey, and that, while half a teaspoonful is a dose as medicine, it is capable of being used, and is used and drunk, as an intoxicating liquor. This is done by weakening the solution with 2/3 water; the ginger is precipitated to the bottom of the glass

by weakening the solution, and the alcohol is drunk off the top which makes a pretty good substitute for a drink of whiskey. The evidence shows as many as two or more bottles were sometimes sold in one day to the same person.

The act includes within its provisions intoxicating liquors of every kind and character which now are in use, or which in the future may come into use as a beverage, no matter by what name they may be named or called, and no matter how small a percentage of alcohol they may contain, and no matter what other ingredients may be in them.

The court instructed the jury: You are further instructed that, in determining whether the liquor which defendant is charged with having sold or kept for sale is intoxicating within the meaning of the law, in the event you find beyond a reasonable doubt that defendant sold Jamaica ginger, as alleged by the state, you may consider any evidence submitted to you as to its nature and constituent elements, its ordinary use, its susceptibility to use as an intoxicant, the extent of such use, and all other evidence which in this particular instance will aid you in determining the question of its intoxicating character, and from all the evidence determine whether or not such liquor as you so find to have been kept for sale or sold was in fact intoxicating—that is, capable of producing intoxication, and capable of being used as a substitute for whiskey, or other ordinary intoxicants. If you find from the evidence on the trial beyond a reasonable doubt that defendant, either by himself or through the instrumentality of an agent, employee or servant, kept for sale or sold intoxicating liquor to be used as a beverage or drink contrary to the provisions of law, as defined to you in these instructions, it will be your duty to find him guilty as charged in the information.

We find no error in this instruction.

Snider v. State, 81 Ga. 753, 7 S. E. 631, 12 Am. St. Rep. 350; Chapman v. State, 100 Ga. 311, 27 S. E. 789; State v. Kezer, 74 Vt. 50, 51, 52 Atl. 116; State v. Muncey, 28 W. Va. 494; Stelle v. State, 77 Ark. 441, 443, 92 S. W. 530;

*Prinzel v. State,* 35 Tex. Cr. R. 274, 33 S. W. 350; *State v. Gray,* 61 Conn. 39, 22 Atl. 675; *Marks v. State,* 159 Ala. 71, 48 South, 864, 133 Am. St. Rep. 20.

2.    Error is assigned because the court refused defendant's tendered instructions Nos. 5 and 6. They are as follows:    No. 5.    "You are instructed that if the compound or preparation alleged to have been kept for sale and sold, be such that the distinctive character and effect of intoxicating liquors are gone and its use as a beverage is rendered undesirable or practically impossible by reason of other ingredients, and the liquor is used merely' as a vehicle for or preservation of the other ingredients or to extract their virtues and hold them in solution, the article will not be within the prohibition of the statute, although its use may produce intoxication."

No. 6.    "You are instructed that all liquors containing alcohol group themselves into three classes; the 1st: embraces what are generally and popularly known as intoxicating liquors unmixed with any other substances; the 2nd: includes articles, equally well known standard articles, and which while containing alcohol are never classed as intoxicating beverages, but their uses are culinary, medical and for the toilet.    It is possible that a man may get drunk upon these articles, but they are not to be classed as intoxicating liquor.    The 3rd: embraces compounds and preparations in which the alcoholic stimulant is present, but are not of the established name and character and are not found in the United States dispensatory or like standard authorities, and these may be classed as intoxicating or otherwise, according to the particular facts of each given case.

If you find from the evidence that there was a sale made in this instance of an article of the first class, then you will find the defendant guilty, but if on the other hand you find from the evidence that the articles sold are of the second class, that is, standard or medical preparations named in the United States dispensatory or like standard authorities,

then you will find the defendant not guilty, for such articles fall into the class of medicines and the like; if you find that there was a sale of articles of the third class— that is, of non-standard preparations, then the question is one for you to decide as to whether or not the particular article or articles are intoxicating liquors intended and used as beverages and merely hiding under the guise of medicine."

The court committed no error in refusing to give these instructions.

*State v. Miller*, 92 Kans. 994, 142 Pac. 979, L. R. A. 1917F, 238, Ann. Cas. 1916B, 365, *Mitchell v. Comm'r*, 106 Ky. 602, 51 S. W. 17.

3. Defendant also claims that the court erred in refusing to give his tendered instruction No. 3, which told the jury that the people must prove beyond a reasonable doubt that a sale was made of intoxicating liquors, either by the defendant personally, or by his agent under his instructions, and with his full knowledge and consent; and instructed the jury instead, that the law makes any person, whose employee or agent shall violate any of its provisions, guilty of a misdemeanor. In this there was no error. Section 22 of the act provides that any person whose employee or agent shall violate any of the provisions of the act, shall for the first offense be deemed guilty of a misdemeanor. There is no merit in this contention when we consider, in the face of this statute, that it is conceded that defendant kept Jamaica ginger for sale and that he sold it himself, and authorized his clerk to sell it.

Woollen, etc., Thornton on Intoxicating Liquors, Sec. 806; *Bryan v. Alder*, 97 Wis. 124, 72 N. W. 368, 41 L. R. A. 662, 65 Am. St. Rep. 99; *State v. Gilmore*, 80 Vt. 514, 68 Atl. 658, 16 L. R. A. (N. S.) 786, 13 Ann. Cas. 321; *Noecker v. People*, 91 Ill. 494, 496; *People v. Longwell*, 120 Mich. 311; 79 N. W. 484; *State v. Constantine*, 43 Wash. 102, 86 Pac. 384, 117 Am. St. Rep. 1043; *Riley v. State*, 43 Miss. 397; *State v. McConnell*, 90 Iowa, 197, 198, 57 S. W. 707.

4.   Defendant claims he sold the Jamaica ginger believing in good faith that it was intended to be used by those who purchased it as a medicine and that this constituted a defense which should have been submitted to the jury. The court excluded certain evidence along this line given by defendant, to show such good faith, and refused defendant's tendered instruction No. 4 in accord with this theory, which asked the court to tell the jury:   You are instructed that a standard medicine prepared according to a standard formula laid down in the United States dispensatory and used by physicians throughout the United States as a medicine in their practice and which without dilution cannot be used as an intoxicant is not an intoxicating liquor in itself, and its sale as a medicine is not a sale of intoxicating liquor, though it may be so diluted by water that it may be drunk in quantities sufficient to become an intoxicant."

Article 22 of the Constitution, which prohibits the sale or keeping for sale of intoxicating liquors provides: "That the handling of intoxicating liquors for medicinal or sacramental purposes may be provided for by statute."

The statute provides:   "That the handling of intoxicating liquors for medicinal or sacramental purposes may be done as in this act provided."

Sections 15 to 18 of the act contain the only provisions for handling intoxicating liquors for medicinal purposes. It is unnecessary to summarize these sections.   They provide in detail the method for the handling of intoxicating liquors for medicinal purposes.   Defendant made no attempt whatever to comply with this statute which permitted him to handle intoxicating liquor for such purposes, but on the contrary wholly ignored the statute, therefore his claim that he sold the liquor as medicine in good faith, honestly believing that it was to be used for medicinal purposes makes no difference and constitutes no defense.   He should have thought of this before and brought himself within the statute which permitted him to handle intoxicating liquors for medicinal purposes.

*Chipman v. People,* 24 Colo. 520, 522, 52 Pac. 677; *Noecker v. People,* 91 Ill. 494, 496; *Wright v. People,* 101 Ill. 126, 136.

5. It is next claimed the court erred in admitting evidence of other sales than the one specifically charged and relied upon in the information. The statute provides that no person shall sell or keep for sale. The information charges defendant with selling and keeping for sale. It was proper to make the charge in this manner, and proof of keeping for sale would support a conviction.

*McClure v. People,* 27 Colo. 358, 364, 61 Pac. 612; *Kingsbury v. People,* 44 Colo. 403, 404, 99 Pac. 601; *People v. Fitzgerald,* 51 Colo. 175, 177, 117 Pac. 135.

Bishop on Statutory Crimes, at section 244, states the rule to be as follows:

"If, as is common in legislation, a statute makes it punishable to do a particular thing specified, 'or' another thing, 'or' another, one commits the offence who does any one of the things, or any two, or more, or all of them. And the indictment may charge him with any one, or with any larger number, at the election of the pleader; employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute. 'The rule,' it was once observed, 'is undoubtedly limited in its application to cases where the offences created in a statute are not repugnant.' And, whatever be the form of the allegation, the proofs need sustain only so much of it as constitutes a complete offence."

In 2 Woollen & Thornton, at sec. 931, it is said:

"So on a charge of keeping liquors with intent to sell them illegally, the prosecution may rely for conviction upon one sale, and yet give evidence of other prior sales, for the purpose of showing the intent with which they were kept, even though indictments on such other sales be pending. * * * So upon a charge of keeping a 'blind tiger' and selling liquor by that means, evidence of sales other than the one charged, if made in similar manner, may be shown.

So it may be shown other persons obtained the liquor of accused in a similar manner. The transactions, however, must be similar in the manner of their occurrence to the one for which the accused is on trial."

6. It is claimed the court unduly urged the jury to reach a verdict and coerced them into agreeing by confining them for an indefinite period after they had decided that it was impossible for them to agree. The record recites that the jury retired on the evening of May 5th; that they did not reach a verdict that night, and upon being brought into court at 9:30 the following morning the foreman reported they had "agreed to disagree." The following colloquy then took place between the court and the foreman:

The Court: "What seems to be the trouble; is it a question of fact or question of law?"

Foreman: "As to whether this stuff is intoxicating liquor or not."

The Court: "It is a question of fact. I don't want you to tell me on which side you stand, but how do you stand as to numbers?"

Foreman: "Nine to three."

Thereupon the court addressed the jury as follows:

"Gentlemen, it has taken about two days to try this case. It is a misdemeanor. While that doesn't mean that you gentlemen should not be just as conscientious and painstaking as if it were any other sort of a case, a new trial means a great hardship on both the people and the defense and expense and time and annoyance to the interested parties. The court is in great hopes that you will be able to arrive at a verdict that will be satisfactory to your consciences and according to the facts in this case, and I am going to ask you to go back and see if you can't do that. Sometimes men on a jury, just like men anywhere else in conference, fail to agree, because somebody takes a stand or several take a stand on one side or the other, and, to use a common expression, they got sort of struck on their own ideas, and that sometimes really keeps them from giving calm con-

sideration to the matter before them and keeps them from agreeing when they might otherwise agree. The Court hopes, gentlemen, that you won't let anything like that stand in the way of an agreement. I don't want you to understand me as saying that anybody ought to give up their conscientious opinion in the matter, but the court does wish that you would go back to your jury room and enter upon your deliberations again with the idea of laying aside, if anything of that kind has come up during the course of your deliberations which might have made any of you a little bit stubborn in support of your own opinion, that you will lay anything of that kind aside and start in and talk the matter over among yourselves and see whether or not you can't agree on what the evidence in this case was to the end that the matter may be settled as between The People and this Defendant, in the interest of all of them. The Court feels that all of you gentlemen expect to do just exactly what you are here to do; that is, to decide this case fairly on the evidence introduced here and the Court sincerely hopes that you will be able to do that. I will ask you to retire again with your Bailiff to take another try at it. You may retire now, gentlemen."

At 11 o'clock the jury instructed the bailiff to inform the court that they were still unable to agree. To this no answer was returned, and at 2:35 p. m. a verdict was rendered.

While we do not commend the practice of the trial court making such a lecture to the jury, we do not think the remarks in this case constitute reversible error. The authorities pretty generally so hold.

Thompson on Trials (2 Ed.) Vol. 2, sec. 2302; *Commonwealth v. Tuey*, 8 Cush. (Mass.), 1, 3; *State v. Smith*, 49 Conn. 376, 386; *Bell v. State*, 81 Ark. 16, 24, 98 S. W. 705; *State v. Rowell*, 75 S. C. 494, 499, 56 S. E. 23; *State v. Rogers*, 56 Kans. 362, 43 Pac. 256; *Terry v. State*, 50 Tex. Crim. Rep. 438, 97 S. W. 1043.

7. In support of the motion for a new trial, the affidavits of three jurors were filed setting forth their reasons and what influenced their minds finally in voting for conviction. These affidavits were properly disregarded. It is well settled that jurors may testify to any fact showing the existence of an outside influence, but they cannot give evidence as to the effect any such outside influence may have had upon their minds in arriving at a verdict. Courts never enter into such fields of conjecture. What they do is to hear the facts and determine as a matter of law the effect reasonably calculated to be produced upon the mind of the juror by such outside influences.

12 Cyc. 751; 2 Thompson on Trials, sec. 2618; *State v. Whalen*, 98 Iowa, 662, 673, 68 N. W. 554, and cases therein cited.

8. In support of the motion for a new trial, an attorney for defendant made an affidavit that, while eating his noonday meal in the dining room of the hotel where the jurors were seated at various points about the room, the bailiff, one Miller, who had the jury in charge, sat at a nearby table and conversed freely concerning the properties of Jamaica ginger, stating that the evidence showed that it was intoxicating and contained more alcohol than whiskey; that one Ben Golliday, a juror who sat as near Miller as did the affiant, was heard to remark that Miller "seems to know all about it." The motion for a new trial was overruled and Miller's alleged conduct as bailiff is assigned as error. There is no affidavit of any juror that he heard the alleged remarks of Miller; indeed affiant does not say that he heard them himself. It is an affidavit that Miller and Golliday were "heard to say," but who heard the remarks is not stated. The affidavit for this reason is hearsay. No affidavit was filed by any juror showing such conduct on behalf of Miller, or that he heard such remarks. If the bailiff made such remarks in the presence and hearing of the jury it was improper. Still it does not follow that the case should be reversed on that account unless it prejudiced

the rights of the defendant. The undisputed evidence, in fact all the testimony in the case, both on behalf of the people as well as the defendant, shows that Jamaica ginger is highly intoxicating and contains more than twice as much alcohol as whiskey. So the facts stated do not in this case warrant the conclusion that they produced any improper influence upon the mind of the jury.

*Beals v. Cone, et al.,* 27 Colo. 473, 62 Pac. 948, 83 Am. St. 92; *Richards v. Richards,* 20 Colo. 303, 38 Pac. 323; *State v. Zettler,* 15 Wash., 625, 47 Pac. 35.

9. It is further contended that, after the case was submitted to the jury, if the bailiff communicated with them at all, except to ask them if they had agreed upon a verdict, this constituted reversible error. When we reflect upon the situation of a jury that has retired to consider its verdict such a claim appears absurd. Jurors must be provided with the ordinary physical necessities of life, and with lodging and meals, like other people, and further communication with them by the bailiff is necessary and unavoidable. Reasonable construction must be placed upon the statute which forbids communication with the jury. We think it means communication of an improper or unnecessary character.

10. The court sentenced defendant to pay a fine of $100.00, and the costs of the prosecution. A statement of the fine and costs filed by the clerk and approved by the court is as follows:

"Witness fees, paid to State's witnesses____$ 68.15

Jury fees, 12 jurors, 3 days, at $2.50 each 90.00

Jury Bailiff, two days at $2.50 per day___ 5.00

Two meals furnished jury and bailiff____ 9.10

Stenographer's fees, 2 days at $10 per day 20.00

Sheriff's fees _____ 14.25

Deputy District Attorney's fees_____ 10.00

Fees—Clerk District Court_____ 28.55

Fine _____ 100.00
                                          _____
                                          $345.05
Docket fee paid by defendant _____ 5.00
                                          _____
                                          $340.05

The court overruled defendant's motion for retaxation of costs in which he asked to be relieved of the payment of $90.00 jury fees; $9.10 for meals furnished the jury and bailiff; $5.00 for salary of the bailiff who had charge of the jury, and $20.00 stenographer's salary. The overruling of this motion was error. The court should have ordered the costs retaxed as prayed.

*Saunders v. People*, 165 Pac. 781; *People v. Kennedy*, 58 Mich. 372, 25 N. W. 318; *United States v. Wilson* (C. C.), 193 Fed. 1007; *State v. Grimes*, 7 Wash, 445, 35 Pac. 361; *Person v. Ozark Co.*, 82 Mo. 491; *Petty v. San Joaquin County Court*, 45 Cal. 245.

The judgment of sentence and fine is affirmed; the judgment taxing the costs is reversed with directions to the lower court to tax the costs as herein directed; neither party to recover costs in this court.

Judgment affirmed in part and reversed in part.

Mr. Justice Teller and Mr. Justice Burke concur.