UNDERWOOD v. STATE.

4300                                     171 S. W. 2d 304

Opinion delivered May 17, 1943.

*Fines F. Batchelor, Howell & Howell* and *Partain, Agee & Partain,* for appellant.

*Guy E. Williams,* Attorney General and *Earl N. Williams,* Assistant Attorney General, for appellee.

Knox, J.   Information was filed in the Crawford circuit court accusing appellant and one Artis Moore of the crimes of "Burglary and Grand Larceny." Appearing as a witness for the State, Moore confessed his own guilt, and testified to facts incriminating appellant.

Appellant was acquitted of burglary, but convicted of grand larceny, and his punishment was fixed at one year in the penitentiary.

Numerous errors were assigned in the motion for new trial, several of which are urged here as grounds for reversal.   Among the assignments of error are two which well may be considered together.   They are first that the court erred in overruling appellant's demurrer to the information, and second that the court erred in

permitting the prosecuting attorney to amend the information during the progress of the trial.

As before stated, the information defined the crimes with which appellant and Moore were charged as "Burglary and Grand Larceny." By way of amplification the information further alleged in substance that appellant and Moore entered into a conspiracy by which it was agreed that Moore should break into Ward's Van Buren Ice Company building and steal therefrom some automobile tires and deliver the same to appellant, who agreed to pay five dollars each therefor; that in furtherance of such conspiracy Moore did break and enter said building and steal four tires, which he delivered to appellant, and appellant paid him part of the money so agreed to be paid, promising to pay the balance later.

Appellant filed a demurrer alleging that the information did not state facts sufficient to constitute an offense, which demurrer was overruled.

During the trial the State undertook to prove the value of the tires. Appellant at the time objected on the ground that the value had not been alleged in the information. Whereupon the court, over appellant's objection, permitted the State to amend the information, so as to allege that the tires so stolen were of the value of forty dollars.

Appellant contends that the information was fatally defective in that it failed to allege the value of the property stolen. He further contends that the court erred in permitting the State to amend in that particular, because he contends such amendment went to a matter of substance and not of form, particularly so since in that part of the information setting out in detail the acts which it is alleged constituted the offense it is stated that appellant and Moore entered into a conspiracy, and under the statutes a conspiracy to commit a crime is a misdemeanor and not a felony. Pope's Digest 3572.

Prior to the adoption of Initiated Act No. 3 of 1936, (Acts 1937 p. 1384) there would have been much merit in appellant's contention. That act was adopted by the

people, however, for the very purpose of simplifying procedure in criminal cases, and eliminating some of the technical defenses by means of which criminals had often in the past escaped punishment for their crimes.

Section 22 of that Act, now § 3851 of Pope's Digest, reads as follows: "The language of the indictment must be certain as to the title of the prosecution, the name of the court in which the indictment is presented, and the name of the parties. It shall not be necessary to include statement of the act or acts constituting the offense, unless the offense cannot be charged without doing so. Nor shall it be necessary to allege that the act or acts constituting the offense were done wilfully, unlawfully, feloniously, maliciously, deliberately or with premeditation, but the name of the offense charged in the indictment shall carry with it all such allegations. The State, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction."

Section 23 of that Act, now § 3852 of Pope's Digest, contains a suggested form for an indictment for murder, which prior to the adoption of such Act would have been fatally defective under the authority of many decisions of this court.

Section 24 of said Act, now § 3853 of Pope's Digest, reads as follows: "The prosecuting attorney or other attorney representing the State, with leave of the court may amend an indictment, as to matters of form, or may file a bill of particulars. But no indictment shall be amended, nor bill of particulars filed, so as to change the nature of the crime charged or the degree of the crime charged. All amendments and bills of particulars shall be noted of record."

In view of the provisions of § 22 of Act No. 3, (Acts 1937 p. 1384), it is doubtful whether it is now necessary in an indictment or information which specifically defines the crime charged as being grand larceny to allege the value of the property stolen. While the term grand larceny is not defined by statute, (§ 3134 of Pope's Digest

merely providing different punishment in cases where the value of the property stolen is more or less than ten dollars), this court has declared that the stealing of property of the value of more than ten dollars constitutes the crime of grand larceny. *Crossland* v. *State,* 77 Ark. 544, 92 S. W. 776; *McCarthy* v. *State,* 90 Ark. 384, 119 S. W. 647. So designating the offense by name as grand larceny is probably sufficient allegation that the value of such property exceeds the sum of ten dollars.

That the value of the property here stolen exceeded the sum of ten dollars is in fact inferentially alleged in the information, since it is alleged that four tires were stolen, and that appellant agreed to pay the sum of five dollars for each tire.

Assuming, without deciding, however, that the information as originally filed was defective, this defect was cured by the amendment, which we hold the court properly permitted the prosecuting attorney to make. It is well settled by the decisions of this court that under the provisions of § 3853 of Pope's Digest, above quoted, the attorney representing the State, with leave of the trial court, may amend an indictment or information, provided such amendment does not have the effect of changing the nature of the crime charged or the degree thereof. *Collins* v. *State,* 200 Ark. 1027, 143 S. W. 2d 1; *Johnson* v. *State,* 197 Ark. 1016, 126 S. W. 2d 289; *Brewer* v. *State,* 195 Ark. 477, 112 S. W. 2d 976.

It is true that under the provisions of that section such amendments are limited to matters of form, but this section must be read in connection with §§ 3851 and 3852 of Pope's Digest, which make the distinction between form and substance much different than that which existed between the two under opinions of this court delivered prior to the adoption of such act.

Another alleged error is that the testimony of Moore who admittedly is an accomplice is not sufficiently corroborated. Moore testified that on the morning before the crime was committed he went to see defendant who, with his brother, operates a taxicab business seeking to

borrow fifty cents, that as he was leaving defendant asked him if witness knew where defendant could get any tires, and upon witness replying that he did not, defendant advised witness that he would give him five dollars apiece for all he could get. Witness testified further that about eleven o'clock that night he broke into the ice plant and stole four tires and hid them behind the cooling tower; that he then went over to the Missouri Pacific freight depot and called defendant's place of business. On the first call he learned the defendant was not there. He waited a few minutes and called again and Roy Hanson, one of defendant's employees, answered the phone, and witness told Hanson that he had the stuff down there and to come and get it, and shortly thereafter defendant drove down in his car, and witness and defendant proceeded to load the tires into defendant's car, whereupon witness and defendant drove together to the cab company garage, entering through the rear door, where witness and defendant proceeded to take three of the tires off of defendant's car and replace them with three of the stolen tires; that while they were changing the tires someone came into the front of the building, and defendant went up to meet such person, and witness got behind the car and began putting air into one of the tires; that when they had finished defendant paid witness fifteen dollars and promised to pay the balance later; then defendant's brother, who was a partner in the business, took the witness home; that witness did not have a watch and could not exactly fix the time when he and defendant were changing the tires, but he thought it was about twelve o'clock.

The following evidence is relied on by the State as constituting sufficient corroboration to support the conviction. There was evidence that (1) defendant's tires were in bad state of repair (2) defendant and Moore were friendly as disclosed by the facts that defendant and his brother extended to witness a small line of credit amounting to one dollar per week, that defendant had previously executed a bond for witness and had also indorsed his note for the sum of twenty dollars, (3) that witness was

in defendant's place of business the morning before the crime was committed, and did in fact talk to defendant, (4) two witnesses employed at the Missouri Pacific freight house testified that witness, about eleven o'clock of the night of the robbery did call defendant's place of business by means of the phone in the freight house, but they say only that he asked that a cab be sent for him, (5) defendant himself admits that Moore was in his place of business near midnight, but says he was only waiting for a cab to take him home, that he, the defendant, was at the time fixing a tire on his car and that Moore tried to assist him, but was too drunk to do so, and that when defendant's brother returned in his cab he took the witness home.

The evidence shows that defendant was a professional bondsman, and he was leaving the jail in the early morning just as witness Moore was being taken to jail, but defendant says he had gone to the jail to see if anyone needed his services as a bondsman, and that he did not recognize Moore as the person who the officers had in custody.

Defendant admits that in the afternoon of the day on which Moore was arrested he went to the jail and asked to see him, but, on being told that Moore was being questioned by the officers, left without seeing him. His explanation is that he had been requested to become surety on Moore's bond, and that he had gone to see Moore to ascertain what arrangements could be made with respect thereto, and also with respect to the payment of the note which he had indorsed.

Section 4017 of Pope's Digest expressly prohibits conviction of a felony upon the testimony of an accomplice, unless the same is corroborated by other evidence tending to connect the defendant with the commission of the offense.

The corroborating testimony required by this statute must be of a substantial character which, of itself and independently of the statement of the accomplice, tends in some degree to connect the defendant with the

commission of the crime, although such evidence need not in itself be sufficient to support a conviction. *Cook v. State,* 75 Ark. 540, 87 S. W. 1176; *Brewer* v. *State,* 137 Ark. 243, 208 S. W. 290; *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Breed* v. *State,* 198 Ark. 1004, 132 S. W. 2d 386; *Bennett & Holiman* v. *State,* 201 Ark. 237, 144 S. W. 2d 476, 131 A. L. R. 908.

Evidence which merely raises a suspicion that accused may be guilty, or which is as consistent with defendant's innocence as guilt is not sufficient. *O'Neal* v. *State,* 192 Ark. 1178, 96 S. W. 2d 780; *Wilson* v. *State,* 190 Ark. 651, 80 S. W. 2d 925; *Roathe* v. *State,* 185 Ark. 1039, 50 S. W. 2d 985; 22 C. J. S. 1412.

The question of the sufficiency of the corroborating evidence justifying submission of the question of defendant's guilt to the jury must, of necessity, be governed by the facts and circumstances of each particular case, having regard for the nature of the crime, the character of the accomplice's testimony and the general requirements with respect to corroboration. 22 C. J. S. 1412.

We are of the opinion that the evidence above set out, which the State contends corroborates the testimony of Moore, even if true, is not sufficient to constitute that character of corroboration which is contemplated by the statute, and that the trial court therefore erred in denying appellant's motion for a directed verdict.

The trial court gave instruction No. 7 as follows: "Gentlemen of the jury, as I have stated to you in each instance as I do in all criminal cases, that if you find beyond a reasonable doubt that this defendant, Underwood, conspired and planned or agreed with Moore that Moore should steal some tires, and you must find that fact beyond a reasonable doubt and by a reasonable doubt is meant a rational doubt arising in the minds of reasonable men from the evidence or lack of evidence in the case. And if, after weighing all the proofs a jury impartially and honestly entertains the belief that the defendant may be innocent of the offense charged against him, he is entitled to the benefit of that doubt and should be

acquitted. But the law does not mean by a reasonable doubt that the proof should establish the defendant's guilt to an absolute certainty, nor one of those suppositions or possible doubts that arise in the minds of some men on all important occasions, but merely that a defendant should be found guilty beyond a reasonable doubt. Speculations, notions or possibilities resting upon mere conjectures not arising or deducible from the proof or the want of it should not be confounded with a reasonable doubt. A doubt suggested by the ingenuity of counsel, or of any ingenuity, not legitimately warranted by the evidence or want of it, or one born of a merciful inclination to permit the defendant to escape the penalty of the law, or one prompted by sympathy for the defendant or those connected with him, is not what is meant by a reasonable doubt. To constitute a reasonable doubt it must be an honest substantial misgiving generated by the proof or the want of it. It is such a state of proof as fails to convince your judgment and conscience and satisfy your reason of the guilt of the accused. If the whole evidence when carefully examined, weighed, compared and considered produces in your minds a certain conviction or belief of the defendant's guilt, such an abiding conviction as you would be willing to act on in the most weighty and important affairs in your own life, you may say it to be free from any reasonable doubt, and should find a verdict accordingly."

Appellant contends that this instruction is erroneous, and we agree. In the case of *Bell* v. *State,* 81 Ark. 16, 98 S. W. 705, Mr. Justice Riddick discussing an instruction relating to the law of reasonable doubt said: "But in most cases it would probably do as well for the trial judge to simply follow the statute, and tell the jury that, before convicting the defendant, his guilt must be established beyond a reasonable doubt; that if, after a careful consideration of all of the evidence, they have a reasonable doubt of his guilt, they should acquit. On the other hand, if, after such consideration, they are convinced of his guilt beyond a reasonable doubt, they should convict.

"In this case the presiding judge, in his original charge said to the jury that 'a reasonable doubt is not a mere captious or imaginary doubt, but a doubt voluntarily arising in your minds after a fair and impartial consideration of all of the evidence in the case, and which leaves your minds in that condition you do not feel an abiding conviction to a moral certainty of the truth of the charge.' This was a very satisfactory explanation of the term, and was all that was needed, and has ample precedent to support it."

In that case the jury, after deliberation, returned and requested further instructions and the court gave an additional instruction pertaining to the same question, concerning which the learned justice said: ". . . It is longer than the first instruction, and by the repetition of the same idea over in different words, and by the way in which it is expressed, make the impression of an effort to convince the jury that there was no obstacle in the way to prevent them from returning a verdict either for or against the defendant. In this instruction, after an extended definition of reasonable doubt, which, it seems to us, rather clouded than cleared the subject, he says: 'If you are so satisfied of defendant's guilt, it is not necessary for you to be able to put your finger on or point out the particular evidence that convinces you; and it is also true that if you are not so satisfied it is not necessary that you should be able to point out the particular matter giving rise to your mental condition in that respect.' "

In the case of *Gilcoat* v. *State,* 155 Ark. 455, 244 S. W. 723, the court had under consideration an instruction relating to reasonable doubt, and Mr. Justice Wood, speaking for the court, there said: "Judge Riddick, speaking for this court in *Bell* v. *State,* 81 Ark. 161, 98 S. W. 705, in an illuminating opinion on the subject of a reasonable doubt, shows how any effort to define it in any other than substantially the simple form that has been so often approved by this court, is wholly unnecessary and may prove, as it did in that case, erroneous. We could not

874

hope, and will not assay, to improve upon what was there said."

The words of Mr. Justice Riddick and Mr. Justice Wood appear to have been prophetic of this case, for here the trial court by undertaking to define reasonable doubt in language other than that which has been so often approved by this court fell into error. In the first place the attempted definition was, we think, unnecessarily long, and like the instruction discussed by Mr. Justice Riddick in *Bell* v. *State, supra* "rather clouded than cleared the subject." While several expressions are contained therein which might properly be held to constitute error, it is sufficient, we think, to point out one. The instruction contains this statement: ". . . And if, after weighing all the proofs a jury impartially and honestly entertains the belief that the defendant may be innocent of the offense charged against him, he is entitled to the benefit of that doubt and should be acquitted."

This unquestionably constituted error. In order to acquit, the jury is not required to believe "that the defendant may be innocent," on the contrary it is required to acquit unless it finds beyond a reasonable doubt that defendant is guilty.

After the jury had deliberated for several hours, during which time it had once or twice returned to the court room and indicated its disagreement, the court gave an additional instruction to the effect that under § 4070 of Pope's Digest, if the jury found defendant guilty, but could not agree upon the punishment, it might leave that question to the court. Appellant concedes that if given before the jury first retired to consider its verdict such instruction would have been proper. He contends, however, that the giving of it at the time it was given had the effect of creating in the minds of the jury the impression that the court was convinced of defendant's guilt. Since the case is to be reversed on other grounds we deem it unnecessary to determine that question, but it may be well to observe in passing that in those

cases where it appears that such an instruction is or may become necessary or proper, it is much the better practice for the court to give it before the jury first retires to consider its verdict.

Other alleged errors are urged by appellant, but since it is not likely that those questions will arise on another trial we deem it unnecessary to further extend this opinion.

For the errors indicated the judgment of the lower court is reversed and the cause remanded for a new trial.